# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| In re: ) | |
| ) | |
| JIM L. SHETAKIS DISTRIBUTING CO., ) | |
| dba SHETAKIS WHOLESALERS, INC., ) | No.: 2:08-cv-00832-RLH-GWF |
| ) | |
| Debtor. ) | Bk. No.: BK-S-00-17939-LBR |
| ) | Chapter 11 |
| HUNT, ORTMANN, BLASCO, PALFFY & ) | |
| ROSSELL, INC., a California corporation, ) | Appeal Ref. No. 08-07 |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **OPINION** |
| ) | |
| JIM L. SHETAKIS DISTRIBUTING CO., a ) | |
| Nevada corporation, dba SHETAKIS ) | |
| WHOLESALERS, INC.; NV LEASE OPTION ) | |
| LLC, a Nevada limited liability company, ) | |
| ) | |
| Appellees. ) | |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Honorable Linda B. Riegle, Bankruptcy Judge, Presiding

Submitted November 24, 2008
Las Vegas, Nevada

Filed March 30, 2009

Opinion by Chief Judge Roger L. Hunt

1

AO 72
(Rev. 8/82)

HUNT, Chief Judge.

After filing for bankruptcy under Chapter 11, Jim L. Shetakis Distributing Co. assigned all of its rights under a lease and purchase option to Nevada Lease Option ("NVLO") on March 12, 2001—a transaction outside the ordinary course of its business. Shetakis did not notify its creditors of the transfer as required by 11 U.S.C. § 363(b)(1), and may have thus violated its creditors' due process rights. In 2004, one of its creditors, Appellant Hunt, Ortmann, Blasco, Palffy & Rossell, Inc., learned that the transfer to NVLO occurred in 2001 and, beginning in July 2007, seeks to have the transfer set aside through motions filed in the bankruptcy case and in this separate adversary action. In this appeal, the Court considers whether the bankruptcy court erred when it granted NVLO's motion for summary judgment. The bankruptcy court concluded that Shetakis' transfer of the lease and purchase option was not void, but voidable under 11 U.S.C. § 549, and that the statute of limitations applicable to voidable transfers, § 549(d), expired prior to the time Hunt Ortmann moved the bankruptcy court to set the transfer aside.

The Court concludes § 549—or at a minimum, its two-year limitations period—applies to Shetakis' transfer to NVLO. The Court further concludes that had Hunt Ortmann been reasonably diligent, it would have discovered Shetakis' failure to provide notice of the transfer soon after learning of the transfer in November 2004, and that the limitations period therefore began to run at that time. The Court additionally concludes the statute of limitations was not equitably tolled by circumstances beyond Hunt Ortmann's control. As such, the two-year limitations period expired shortly after November 2006—months before Hunt Ortmann filed its motion to avoid the transfer and its adversary Complaint on July 24 and 25, 2007. The Court therefore affirms the bankruptcy court's order of summary judgment.

### I. BACKGROUND

Hunt Ortmann is a California law firm that represented Shetakis and its prior owners, Anthony DeGravina and Bruno Campo, from August 1999 to May 2000. Hunt Ortmann claims Shetakis owed it $4,279.37 in unpaid attorney fees at the time Hunt Ortmann terminated its

representation of Shetakis. Hunt Ortmann advised Shetakis of the debt in a letter memorializing that termination, dated May 25, 2000, and did so again in a letter to Shetakis' subsequent counsel dated July 18, 2000.

In September 2000, Shetakis' prior owners sold Shetakis to LevelSource. On October 18, 2000, Shetakis' new owners filed a Chapter 11 bankruptcy petition on behalf of Shetakis, but did not schedule or otherwise list Hunt Ortmann as a creditor in its schedules or statement of financial affairs. Hunt Ortmann, not yet aware of Shetakis' pending bankruptcy petition, notified Shetakis' accountants of its claim for unpaid fees in December 2000 and, it claims, continued to send monthly invoices to Shetakis advising Shetakis of the balance. Hunt Ortmann also claims that in December 2000 it notified Shetakis of its additional claim for indemnification and reimbursement from Shetakis in connection with a separate lawsuit, *DeGravina v. Brown* (the "*Brown* action," filed in Los Angeles County Superior Court).

On December 6, 2000, Shetakis, as debtor-in-possession in the bankruptcy case, filed a motion pursuant to 11 U.S.C. § 365(a) to assume a lease of real property it had entered with the lessor in 1999.[1] The lease required Shetakis to pay annual rent of $24,000 over a fifteen-year term and included an option to purchase the real property that was the subject of the lease—a warehouse located in Las Vegas—for $5 million. On January 4, 2000, and in the course of its representation of Shetakis, Hunt Ortmann recorded a Memorandum of Lease in the Clark County Recorder's Office, which described the lease and purchase option to which Shetakis was a party. Hunt Ortmann alleges that the rent due under the agreement and the purchase price of the option were low relative to the market value of the property, and that the lease and option were therefore highly valuable assets. The bankruptcy court did not finally approve Shetakis' assumption of the lease until March 29, 2001. However, it is undisputed that while final approval of the assumption motion was pending in the bankruptcy court, Shetakis, through its CEO, Gerry Zobrist, and its

---

[1] Unless otherwise indicated, all subsequent references to a "section" of the United States Code refer to a section within Title 11, Bankruptcy.

1   President, Lloyd Neher, and without providing notice to creditors or seeking approval of the
2   bankruptcy court, entered into a contract with NVLO regarding the property.  In the agreement,
3   Shetakis assigned all of its rights under the lease, including the purchase option, to NVLO, and
4   NVLO agreed to loan Shetakis $1.1 million (minus a $50,000 loan fee) at 5.6% annual interest and
5   to sublease the property back to Shetakis for a four-year term with two one-year extensions for a
6   monthly rent of $25,000 (with an annual rent increase of $1000).  The transfer occurred on March
7   12, 2001.  On April 6, 2001, NVLO recorded a "Concent [*sic*] to Assignment" (hereafter the
8   "Consent") with the Clark County Recorder's Office, which described Shetakis' assignment of the
9   lease and option to NVLO in the chain of title for the property.
10          NVLO was formed in February 2001 for the sole purpose of investing in the subject
11  property.  Zobrist has a 27.3% membership interest in NVLO, Neher has a 3.2% membership
12  interest, and Neher's wife has a 5.9% membership interest—a 36.4% total membership interest
13  between them.  In short, Zobrist and Neher, CEO and President, respectively, of Shetakis, assigned
14  the lease and purchase option to an entity in which they hold significant financial interests.
15          In its Debtor's Disclosure Statement, filed with the bankruptcy court on February 9,
16  2001, Shetakis listed the lease, but represented that "[t]he lease is considered an operating lease
17  rather than a capital lease.  No consideration is given in this business valuation report to the real
18  estate value, if any, of the leasehold interest in these facilities."  Shetakis thus reported that the
19  lease and option had no value.  For reasons not revealed to the Court (nor, apparently, to the
20  bankruptcy court), Shetakis did not disclose the March 2001 transfer of the lease and option to its
21  creditors or to the bankruptcy court in its bankruptcy filings, including its Debtor's Disclosure
22  Statement, Debtor's Plan of Reorganization, and Debtor's First Amended Plan of Reorganization.
23  The bankruptcy court entered its Order Confirming Plan of Reorganization on April 26, 2001.
24          Richard Blasco, a named partner of Hunt Ortmann and designated by Hunt
25  Ortmann as the person most knowledgeable regarding the facts of this case, testified that in
26  December 2001, during his deposition in the *Brown* action, he learned Shetakis had filed for

4

bankruptcy. (Blasco Dep., 4 Appellant's Excerpts of R. at A.E.R. 0578, 13:23–14:8.) Having previously represented Shetakis, Hunt Ortmann was, in December 2001, also aware of Shetakis' lease and purchase option. (6 Appellant's Excerpts of R. at 1240.)

Hunt Ortmann claims that after the bankruptcy case was closed on July 5, 2002, it continued to send Shetakis notices of its alleged unpaid claims. On February 28, 2003, Hunt Ortman sent Shetakis an additional demand letter for indemnification and reimbursement arising out of yet another case, *DeGravina v. Hunt, Ortmann, Blasco, Palffy & Rossell, Inc.* (the "*HOBPR* action"), also filed in Los Angeles County Superior Court.

On March 1, 2004, and in connection with the *HOBPR* action, counsel for Hunt Ortmann deposed Shetakis CFO Andrew Dannin, who testified that the lease and option were assigned and transferred to NVLO. (Dannin Dep., 6 Appellant's Excerpts of R. at 1070–72.) According to Hunt Ortmann, Dannin erroneously testified the lease and option were transferred around October 2001, approximately seven months after the transfer actually occurred, and more than five months after confirmation of Shetakis' reorganization plan. Hunt Ortmann concedes that in or about November 2004, it obtained actual knowledge of the transfer of the lease and option to NVLO in a telephone conversation with its counsel. (4 Appellant's Excerpts of R. at A.E.R. 0560.)

Two weeks after Dannin's deposition, Shetakis advised Hunt Ortmann that it no longer intended to participate in the California-based arbitration proceedings in the *HOBPR* action because Hunt Ortmann's claims against Shetakis were discharged in the bankruptcy case. In Shetakis' absence, the arbitrator entered default judgment against Shetakis for $925,752, plus interest.

Hunt Ortmann subsequently domesticated the default judgment in Nevada and began collection efforts against Shetakis. In response, Shetakis sought to include Hunt Ortmann in the bankruptcy case for the first time by filing with the bankruptcy court a "Motion for Leave to Reopen the Chapter 11 Bankruptcy to Include Omitted Creditor and for Emergency Stay" on

November 13, 2006.  On December 13, 2006, the bankruptcy court re-opened the bankruptcy case.  Hunt Ortmann claims that only during the 2006 bankruptcy proceedings, which began on November 13 of that year, did it more fully become aware of the facts concerning the transfer of the lease and option.  Hunt Ortmann also claims that during the 2006 proceedings, Shetakis advised it for the first time that if Shetakis was required to pay Hunt Ortmann's claim in full, it would "likely be forced to again seek protection under Chapter 11, something it would not have to do had its most valuable asset not been transferred" to NVLO.  (Appellant's Op. Br. 24.)

On July 24, 2007, Hunt Ortmann filed a "Motion for Authorization to Initiate Avoidance Action In Adversary Proceeding Pursuant to 11 U.S.C. § 549" in the Shetakis bankruptcy case, in which it argued it should be permitted to stand in the shoes of Shetakis and initiate an avoidance action under 11 U.S.C. § 549 to recover the lease and purchase option.  The next day, Hunt Ortmann filed its adversary Complaint in this action in the bankruptcy court, where it brought three claims.  First, it sought a declaration that Shetakis sold property of its estate other than in the ordinary course of business and without the notice and hearing required by § 363(b)(1) and that, as a result, the transfer is void and the lease and option remain property of the Shetakis bankruptcy estate.  Second, Hunt Ortmann argued in the alternative that if the transfer is not void, it is voidable under § 549.  Third, Hunt Ortmann claimed that because the transfer is voidable, the lease and option may be recovered and returned to Shetakis' bankruptcy estate pursuant to § 550.  On October 12, 2007, the bankruptcy court granted the § 549 motion (filed July 24, 2007) and authorized Hunt Ortmann "to initiate and prosecute an avoidance action against NV Lease Option, LLC pursuant to 11 U.S.C. § 549."  (Dkt. #11, Appellee's Supplemental Excerpts of R. Ex. 2 S.E.R. 0009.)

On February 15, 2008, NVLO moved for summary judgment on all of Hunt Ortmann's claims in the adversary proceeding.  At the conclusion of oral argument on NVLO's motion, held on March 31, 2008, the court granted the motion and stated its reasons for doing so.  The bankruptcy court concluded the transfer was not void, but voidable pursuant to § 549, and that

AO 72
(Rev. 8/82)

§ 549's two-year limitation on motions to avoid such transfers had expired.  Hunt Ortmann appeals.

## II.  JURISDICTION AND STANDARDS OF REVIEW

The Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).  A bankruptcy court's conclusions of law are subject to de novo review, as are its grants of summary judgment.  *In re Bialac*, 712 F.2d 426, 429 (9th Cir. 1983); *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008).  In considering NVLO's motion for summary judgment de novo, the Court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the [bankruptcy] court correctly applied the relevant substantive law."  *See McDonald v. Sun Oil Co.*, 548 F.3d 774, 778 (9th Cir. 2008) (internal quotation marks and citations omitted).  "A factual dispute is genuine only if a reasonable trier of fact could find in favor of the nonmoving party.  A mere scintilla of evidence supporting a nonmovant's position is insufficient to withstand summary judgment."  *Id.* (internal quotation marks and citation omitted).

A bankruptcy court's findings of fact are reviewed for clear error, and mixed questions of law and fact are reviewed de novo.  *In re BCE West, L.P.*, 319 F.3d 1166, 1170 (9th Cir. 2003) (citation omitted).  In the Ninth Circuit, the standard of review for equitable tolling claims is not well-settled: relevant cases have reviewed such claims either de novo or for an abuse of discretion.  *See Forester v. Chertoff*, 500 F.3d 920, 929 n.11 (9th Cir. 2007).

## III.  DISCUSSION

The Court now considers whether the bankruptcy court erred in determining that the transfer of the lease and option made in violation of § 363(b) was not void; that the transfer was instead voidable pursuant to § 549 and therefore subject to § 549(d)'s two-year statute of limitations; and that there are no genuine issues of material fact.

//

//

7

### A.     Remedies for Violation of § 363(b)(1)'s Notice Requirement

"Because the bankruptcy system is premised on Constitutional Due Process principles requiring notice and opportunity to be heard, a bankruptcy trustee must give notice reasonably calculated, under all circumstances, to appraise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000) (internal quotation marks and citations omitted). To that end, section 363(b)(1) requires notice and, where requested, a hearing before a trustee uses, sells, or leases property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1) (2006); *see also id.* § 102(1); *In re Roth Am.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike a balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets") (internal quotation marks, citation, and alteration omitted). "[T]he notice requirements are contained in Bankruptcy Rule 2002(a)(2) which provides, in part, that all creditors receive not less than 20 days notice of a proposed use, sale, or lease of property other than in the ordinary course of business." *In re Globe Inv. & Loan Co.*, 867 F.2d 556, 560 (9th Cir. 1989). In addition, Bankruptcy Rule 2002(c)(1) requires notices of a private sale of property outside the ordinary course of business to include the terms and conditions of the sale and a general description of the property. As with most Chapter 11 cases, no trustee was appointed here; Shetakis instead acted as debtor-in-possession until the reorganization plan was approved and the case closed. Section 1107 provides that a debtor-in-possession has, with certain exceptions not applicable here, all the rights, powers, duties, and functions of a trustee. 11 U.S.C. § 1107 (2000). The requirements of § 363(b)(1) therefore apply to debtors-in-possession. *See In re Lavigne*, 114 F.3d 379, 384 & n.3 (2d Cir. 1997). Accordingly, Shetakis was prohibited from using, selling, or leasing property of the bankruptcy estate outside the ordinary course of business without prior notice to its creditors.

1    The parties agree that Shetakis violated § 363(b)(1) by transferring the lease and
2 option to NVLO—a transfer outside Shetakis' ordinary business activities—without providing the
3 required notice.  But the parties disagree about the legal effect of that violation.  Hunt Ortmann
4 argues Shetakis' failure to notify its creditors of the transfer rendered the transfer void ab initio.
5 As a result, Hunt Ortmann argues, the bankruptcy court should have granted its request for relief
6 declaring that the lease and option remain property of the bankruptcy estate.  NVLO argues the
7 transfer was not void but merely voidable, and that the two-year statute of limitations applicable to
8 motions to set aside voidable transfers, § 549(d), has expired.

9    The text of § 363 does not prescribe a remedy for failure to give the notice required
10 in subsection (b)(1).  Not surprisingly then, courts have not treated such violations uniformly.  *See*
11 *In re Cavalieri*, 142 B.R. 710, 715 (Bankr. E.D. Pa. 1992).  Some have held transfers in violation
12 of § 363(b)(1) are void ab initio and must therefore be set aside, *see Lavigne*, 114 F.3d at 384–85;
13 *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 850 (Bankr. N.D. Ill. 2000); *In re First Int'l Servs.*
14 *Corp.*, 25 B.R. 66, 70–71 (Bankr. D. Conn. 1982); others have treated the transfers "as voidable,
15 usually at the option of the creditor or interested party who unjustifiably failed to receive notice of
16 the sale[,]" *Cavalieri*, 142 B.R. at 715; *see also In re Fernwood Markets*, 73 B.R. 616, 617 (Bankr.
17 E.D. Pa. 1987); and still others, balancing the interests at issue, have tailored remedies to the
18 particular facts before them or concluded the transfer should not be set aside or avoided, *see In re*
19 *Tigue*, 82 B.R. 724, 736 (Bankr. E.D. Pa.1988) (ordering disgorgement of improperly gained
20 financial benefit); *In re New York City Shoes, Inc.*, 89 B.R. 479, 484 (Bankr. E.D. Pa. 1988)
21 (ordering assessment of damages based on the "estimated potential damage to the estate"); *In re*
22 *Edwards*, 962 F.2d 641 (7th Cir. 1992) (weighing interests of purchaser and mortgagee who failed
23 to receive notice of sale and concluding sale should not be set aside).  The Ninth Circuit has issued
24 no case prescribing a remedy for violations of § 363(b)(1).  The Court now considers which of the
25 available remedies is the most appropriate.
26 //

**B.      Avoidance and Limitation Period Under § 549**

Section 549 of the Bankruptcy Code provides a mechanism to remedy unauthorized post-petition transfers of property. That section reads, in relevant part, as follows:

> (a) Except as provided in subsection (b) or (c) of this title, the trustee may avoid a transfer of property of the estate—
> (1) that occurs after the commencement of the case; and
> . . . . .
> (2)(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a) (2000). The Court first turns to the question of what party may exercise the avoidance power set forth in § 549. As is confirmed by its text and that of § 1107, "§ 549 is an avoidance power belonging solely to the trustee or debtor-in -possession." *In re Pointer*, 952 F.2d 82, 87 & n.9 (5th Cir. 1992) (citations omitted); § 549(a) ("the *trustee* may avoid. . . .") (emphasis added). "In general, as well as under § 549, only trustees and debtors-in-possession, *not* creditors, have standing to invoke avoidance powers." *Id.* (emphasis in original); *accord In re Paxton*, 440 F.3d 233, 237 (5th Cir. 2006).

An exception to this general rule exists. A bankruptcy court may authorize an individual creditor to bring an avoidance action on behalf of the estate upon a showing of extraordinary circumstances, such as where the trustee or debtor-in-possession itself has no incentive to bring the action, or when the action is otherwise in the best interest of the estate. *See Pointer*, 952 F.2d at 88 (quoting *In re V. Savino Oil & Heating Co.*, 91 B.R. 655, 656–57 (Bankr. E.D.N.Y. 1988)); *In re Williams*, 167 B.R. 77 (Bankr. N.D. Miss. 1994); *In re Housecraft Industries USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002); *see also In re Photo Promotion Assocs., Inc.*, 881 F.2d 6, 8 (2d Cir.1989) (noting "the broad discretion a bankruptcy judge has in applying § 549(a)"). When a creditor is so authorized, it may exercise the avoidance power of § 549, but it must do so within the time that section allots. As subsection (d) provides,

> [a]n action or proceeding under this section may not be commenced after the earlier of—
> (1) two years after the date of the transfer sought to be avoided; or
> (2) the time the case is closed or dismissed.

AO 72
(Rev. 8/82)

11 U.S.C. § 549(d) (2000). As the Fifth Circuit has noted, "[i]t would make little sense to impose a deadline on the trustee to avoid a transfer, but nevertheless to permit a creditor to exercise the avoidance power without such a limitation." *Pointer*, 952 F.2d 82, 88 (1992). By the same reasoning, this Court concludes it would make little sense to impose a two-year deadline on trustees seeking to avoid an improper transfer, but to impose a different deadline or no deadline on a creditor seeking the same result through another statute, here § 363(b)(1), which itself provides no remedy for its violation. The Court therefore concludes, as did the bankruptcy court, that § 549(d)'s two-year limitation on proceedings to set aside unauthorized transfers applies here.

Hunt Ortmann filed a motion in the Shetakis bankruptcy case on July 24, 2007, titled "Motion for Authorization to Initiate Avoidance Action In Adversary Proceeding Pursuant to 11 U.S.C. § 549." There, Hunt Ortmann argued it should be permitted to stand in the shoes of Shetakis and initiate an avoidance action under § 549 to recover the lease and purchase option. (The next day, Hunt Ortmann filed its Complaint in this adversary proceeding, where it claims that if the transfer was not void, it was voidable pursuant to 11 U.S.C. § 549.) The bankruptcy court granted Hunt Ortmann's § 549 action in the Shetakis bankruptcy case on October 12, 2007, giving Hunt Ortmann express permission "to initiate and prosecute an avoidance action against NV Lease Option, LLC pursuant to 11 U.S.C. § 549." (Dkt. #11, Supplemental Excerpts of R. Ex. 2 S.E.R. 0009.) Hunt Ortmann does not dispute that in December 2001, prior to the close of the bankruptcy case, it learned that Shetakis had sought bankruptcy relief. Hunt Ortmann also does not dispute that in 2004 it, through counsel, was informed of the transfer of the lease and purchase option to NVLO. (6 Appellant's Excerpts of R. 1250–51; Appellant's Opening Br. 11.) However, Hunt Ortmann argues § 549(d)'s statute of limitations was tolled until November 2006—the month it filed its motion to reopen the bankruptcy case—because prior to that date, it claims, it did not know enough about the transfer and its implications to initiate the running of the statute of limitations. The bankruptcy court disagreed. It expressed uncertainty as to whether the statute of limitations began to run in 2001, but noted that Hunt Ortmann knew of the transfer in 2004, and concluded the

11

1 limitations period began running, at the latest, in 2004, but that Hunt Ortmann failed to bring a §
2 549 motion to avoid for more than two years after the limitations period began to run.  (6
3 Appellant's Excerpts of R. 1262–64.)

4        Statutes of limitation "are primarily designed to assure fairness to defendants" and
5 to "promote justice by preventing surprises through the revival of claims that have been allowed to
6 slumber until evidence has been lost, memories have faded, and witnesses have disappeared."
7 *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965) (quoted in *Olman v. Holland America*
8 *Line, Inc.*, 538 F.3d 1271, 1278 (9th Cir. 2008)).  However, "[t]his policy of repose . . . is
9 frequently outweighed . . . where the interests of justice require vindication of the plaintiff's
10 rights." *Burnett*, 380 U.S. at 428.  With the purposes of statutes of limitation in mind, the Court
11 now considers Hunt Ortmann's arguments that the statute of limitation in § 549(d) was tolled and
12 did not begin to run until November 2006.

13        **1.    The Discovery Rule and Equitable Tolling**

14        "Because it is inequitable to bar someone who has no idea he has been harmed from
15 seeking redress, the statute of limitations has generally been tolled by the 'discovery rule.'  Under
16 this rule, the statute only begins to run once a plaintiff has knowledge of the 'critical facts' of his
17 injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pac. Nw.*
18 *Research Foundation Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (quoting *United States v. Kubrick*,
19 444 U.S. 111, 122 (1979)); *see also Moyer v. United Dominion Indus.*, 473 F.3d 532, 547 (3d Cir.
20 2007) (under discovery rule, "the limitations period begins to run when the plaintiff knows, or
21 reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by
22 another party's conduct") (internal quotation marks and citation omitted); *O'Connor v. Boeing N.*
23 *Am., Inc.*, 311 F.3d 1139, 1147 (9th Cir. 2002) ("A plaintiff knows or reasonably should know of a
24 claim when he or she knows "both the existence and the cause of his injury.")  But "[t]here is a
25 twist to the discovery rule: The plaintiff must be diligent in discovering the critical facts.  As a
26 result, a plaintiff who did not actually know that his rights were violated will be barred from

1   bringing his claim after the running of the statute of limitations, if he should have known in the
2   exercise of due diligence." *Id.* (citation omitted); *see also In re Gen. Am. Life Ins. Co. Sales*
3   *Practices Litig.*, 391 F.3d 907, 912 (8th Cir. 2004) (discovery rule tolls statute of limitation for the
4   period of time "during which the injured party is *reasonably unaware* that an injury has been
5   sustained.") (internal quotation marks and citation omitted) (emphasis in original).  In addition,
6   "[t]he party claiming the benefit of the discovery rule has the burden of demonstrating that it
7   applies, and must establish reasonable diligence in investigating his or her . . . condition, with
8   'reasonableness' considered under an objective standard." *Moyer*, 473 F.3d at 547 (citation
9   omitted); *see also Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 770 (9th Cir. 1982).

10           The discovery rule differs from the doctrine of equitable tolling. "Equitable tolling
11  is frequently confused . . . with the discovery rule. . . .  It differs from the [discovery rule] in that
12  the plaintiff is assumed to know that he has been injured, so that the statute of limitations has
13  begun to run; but he cannot obtain information necessary to decide whether the injury is due to
14  wrongdoing and, if so, wrongdoing by the defendant." *Cada v. Baxter Healthcare Corp.*, 920 F.2d
15  446, 451 (7th Cir. 1990) (quoted in *Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008)
16  (alteration in *Garcia*)).  The doctrine of equitable tolling "applies when the plaintiff is prevented
17  from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary
18  circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v.*
19  *Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999); *see also Huynh v. Chase Manhattan Bank*, 465 F.3d
20  992, 1004 (9th Cir. 2006) (citing the following cases with the following parenthetical descriptions:
21  *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1175, 1178 (9th Cir. 2000) ("If a reasonable plaintiff
22  would not have known of the existence of a possible claim . . . then equitable tolling will serve to
23  extend the statute of limitations . . . until the plaintiff can gather what information he needs.");
24  *Stoll*, 165 F.3d at 1242 ("Equitable tolling applies when the plaintiff is prevented from asserting a
25  claim by wrongful conduct on the part of the defendant. . . ."); *Lantzy v. Centex Homes*, 73 P.3d
26  517, 532–33 (Cal. 2003) (discussing the doctrine of equitable estoppel); *Kotlyarsky v. N.Y. Post*,

13

AO 72
(Rev. 8/82)

1   757 N.Y.S. 2d 703, 707 (N.Y. Sup. Ct. 2003) (citing *Gleason v. Spota*, 599 N.Y.S. 2d 297, 299

2   (N.Y. App. Div. 1993) (stating that equitable estoppel will not toll a statute of limitations if

3   "plaintiff possesses 'timely knowledge' sufficient to place him or her under a duty to make inquiry

4   and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations")).

5   Section 549(d) in particular "can be equitably tolled." *In re Olsen*, 36 F.3d 71, 73 (9th Cir. 1994).

6   The Court now considers whether, within the facts of this case, the statute can be said to have been

7   tolled as a matter of law under either the discovery rule or the equitable tolling doctrine.

### a.   Hunt Ortmann and Reasonable Diligence

Under the discovery rule, the statute of limitations began to run when Hunt Ortmann knew or, in the exercise of reasonable diligence, should have known, that it had been injured by the conduct of another party. *Bibeau*, 188 F.3d at 1108; *Moyer*, 473 F.3d at 547. It is helpful here to first identify Hunt Ortmann's injury and to identify what Hunt Ortmann must have learned to know it had been injured.

First, like Shetakis' other creditors, Hunt Ortmann had a right, rooted in due process and guaranteed by § 363(b)(1), to receive notice of the planned transfer and, upon its request, to object to it at a hearing. *See* 11 U.S.C. §§ 363(b)(1), 102(1); *In re Weisser Eyecare,* 245 B.R. at 850. Those rights were violated, and Hunt Ortmann was injured, when Shetakis transferred the lease and option without providing the required notice (though perhaps other injuries stemmed from that initial failure to provide notice). *See Bibeau*, 188 F.3d at 1108. Other injuries may have stemmed from that initial failure to provide notice: Hunt Ortmann alleges that the assignment constituted a "self-dealing and insider transaction" for little or no consideration, carried out to the detriment of the bankruptcy estate and Hunt Ortmann's creditors. (Appellant's Opening Br. 23–24.) The question under the discovery rule is when, in the exercise of due diligence, Hunt Ortmann should have learned notice was required and that it did not receive that notice, and/or when Hunt Ortmann should have learned of any additional injuries it sustained that stemmed from

1   Shetakis' failure to provide notice.  For it is at that time that the two-year statute of limitations
2   began to run.
3           As Hunt Ortmann correctly points out, "what [a plaintiff] knew and when [he] knew
4   it are questions of fact." *Bibeau*, 188 F.3d at 1108 (internal quotation marks omitted) (alteration in
5   *Bibeau*); *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1417 (9th Cir. 1987) ("The
6   determination of whether a plaintiff knew or should have known of a cause of action presents a
7   question for the trier of fact.").  The issue of reasonable diligence is thus usually for a trier of fact
8   to decide.  "[B]ut where the facts are so clear that reasonable minds cannot differ, the
9   commencement period may be determined as a matter of law" on a motion for summary judgment.
10  *See Moyer*, 473 F.3d at 548 (internal quotation marks and citation omitted); Fed. R. Civ. P. 56(c);
11  *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*, 391 F.3d at 912 ("Although the question
12  whether a party could have discovered its injury through the exercise of reasonable diligence is
13  normally a factual issue best determined by the collective judgment, wisdom and experience of
14  jurors, the commencement of the limitations period may be determined as a matter of law if the
15  facts are so clear that reasonable minds cannot differ.") (internal quotation marks and citation
16  omitted); *see also Kramas*, 672 F.2d at 770 ("reasonable diligence is tested by an objective
17  standard, and when uncontroverted evidence irrefutably demonstrates plaintiff discovered or should
18  have discovered the fraudulent conduct, the issue may be resolved by summary judgment")
19  (citations omitted).  The Court now considers whether the material facts relating to whether Hunt
20  Ortmann acted with reasonable diligence are so clear that reasonable minds cannot differ.
21          The offending transfer occurred on March 12, 2001.  On April 6, 2001, NVLO
22  recorded a "Consent" to the assignment in the Clark County Recorder's Office, which described
23  the assignment of the lease and option from Shetakis to NVLO in the chain of title for the property.
24  Hunt Ortmann does not dispute that it learned Shetakis had filed for bankruptcy in December
25  2001.  Having sent Shetakis repeated notice of Shetakis' unpaid debt, Hunt Ortmann certainly
26  knew it was Shetakis' creditor.  Upon learning of Shetakis' bankruptcy in December 2001 then,

Hunt Ortmann must have realized Shetakis had failed to protect its rights by failing to notify it of the bankruptcy. Hunt Ortmann also does not dispute that in November 2004 it, through counsel, was informed of the transfer of the lease and purchase option to NVLO. (6 Appellant's Excerpts of R. 1250–51; Appellant's Opening Br. 11.) Hunt Ortmann had previous knowledge of the lease and option due to its prior representation of Shetakis, as evidenced by the fact that Hunt Ortmann recorded a Memorandum of Lease describing the lease and option in the Clark County Recorder's Office on January 4, 2000.

Hunt Ortmann's knowledge of Shetakis' prior failure to notify it of the bankruptcy case gave Hunt Ortmann reason to suspect that Shetakis had again failed to protect its rights with regard to the assignment of the lease and option. As such, due diligence required Hunt Ortmann to perform at least a minimal investigation into the lawfulness of the transfer. Hunt Ortmann also had additional reason to inquire into the lawfulness of the transfer given the pending *HOBPR* action and Hunt Ortmann's possible future claim for indemnification and reimbursement from Shetakis arising out of that litigation. Hunt Ortmann nonetheless apparently failed to conduct any investigation into the transfer.

In such an investigation, Hunt Ortmann could have examined the bankruptcy files to learn that Shetakis disclosed the lease in its Debtor's Disclosure Statement, filed with the bankruptcy court on February 9, 2001, but inaccurately reported that the lease had no value. Hunt Ortmann could have spoken with Shetakis CFO Andrew Dannin (or other knowledgeable Shetakis employees) about the transfer; performed a search of public records (e.g., using the term "Shetakis" on the Clark County Recorder's webpage, conducting a title search, or obtaining a title report), which would have revealed the recorded Consent or a report leading to the Consent; or corresponded with NVLO, whose contact information it acquired in November, 2004. However, Hunt Ortmann apparently made none of those efforts. If, shortly after learning of the transfer in November 2004, Hunt Ortmann had undertaken even a minimal investigation of the transfer and the law relating to it, the firm would have discovered the date of the transfer and Shetakis' failure

to provide notice of it. In short, upon learning of the transfer in 2004, had Hunt Ortmann acted with reasonable diligence in investigating the details of it, Hunt Ortmann would have discovered its right to receive notice of the transfer had been violated (and other injuries it may have sustained as a result of the transfer). Moreover, given Hunt Ortmann's prior knowledge of Shetakis' failure to include Hunt Ortmann in the bankruptcy case initially, Hunt Ortmann had heightened reason to undertake an investigation of the transfer.

### b. Hunt Ortmann and Equitable Tolling

Hunt Ortmann also argues the statute of limitations was equitably tolled. As noted above, the doctrine "applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). No such circumstances are present here. Neither Shetakis, NVLO, nor any other entity or outside influence prevented Hunt Ortmann from filing its action to set aside the transfer on time. Thus, whether under a de novo or abuse of discretion standard, the Court concludes the bankruptcy court did not err in concluding the two-year limitations period was not equitably tolled. *See Forester*, 500 F.3d at 929 n.11.

### CONCLUSION

Under the material and undisputed facts of this case and in the exercise of reasonable diligence, Hunt Ortmann would have discovered its rights had been violated shortly after learning of the transfer in November 2004. The two-year statute of limitations period set in § 549(d) therefore began to run at that time. However, Hunt Ortmann failed to move to avoid the transfer until late July 2007—well after the limitations period had expired. The bankruptcy court's entry of summary judgment on the issue was therefore appropriate, and its decision is AFFIRMED.

Dated: March 30, 2009.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72
(Rev. 8/82)